UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.                                                              Case No.: 3:23-mj-210-HTC

MARQUAN DEON JOHNSON,

    Defendant.
_____/

## ORDER OF DETENTION

Defendant is charged in a complaint with (1) robbery of a United States Postal Service Letter Carrier, 18 USC § 2114(a); (2) assault on a federal officer or employee, 18 U.S.C. § 111; (3) keys or locks stolen or reproduced, 18 U.S.C. § 1704; and (4) conspiracy, 18 U.S.C. § 371. At Defendant's initial appearance, the Government moved for detention under 18 U.S.C. § 3142(f)(1)(A)[1]. Thus, the question before the Court is whether Defendant poses a risk of flight or danger to the community such that he should be detained pending trial. For the reasons set forth below, the Court finds there are no conditions or combination of conditions the Court could impose which will reasonably assure the Court that Defendant will not be a danger to the community.

---

[1] The Government argues 3142(f)(1)(A) applies because an offense under § 2114, when it involves a firearm, is a crime of violence. Even if that section did not apply, the Government could still move for detention under § 3142(f)(1)(E), which references a felony offense, which is not a crime of violence, but involves the use or possession of a firearm.

1

I.  **Legal Standard**

Pretrial detention is governed by the Bail Reform Act ("the Act"), as codified, in 18 U.S.C. § 3141 *et seq*. Under the Act, the Court shall hold a detention hearing and release a defendant "unless the court determines that release will not reasonably ensure his appearance or will endanger the safety of others." *Taylor v. Pekerol*, 760 F. App'x 647, 653 (11th Cir. 2019). The government bears the burden of establishing risk of flight by preponderance of the evidence, while it must establish dangerousness by clear and convincing evidence. *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990).

The Act lists the factors a court must consider when deciding whether to release or detain a defendant. 18 U.S.C. § 3142(g). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and "(4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant]'s release." *Id*. Additionally, when a defendant is charged with certain statutorily enumerated offenses there is a rebuttable presumption in favor of detention. 18 U.S.C. § 3142(e)(3).

II.  **Analysis**

  **A. Nature and circumstances of the offenses charged**

First, the Court considers the nature and circumstances of the offense charged.

When considering the nature and circumstances of the offense, the Act instructs a court to consider "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). Here, as discussed below, the Government presented evidence that a firearm was used during the robbery of the postal employee.

### B. The weight of the evidence

Next, the Court considers the weight of the evidence. This factor concerns both the weight of the evidence of dangerousness, as well as the strength of the government's underlying case against the defendant. *United States v. Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010); *United States v. Norris*, 188 F. App'x 822, 830 (11th Cir. 2006). Here, the Court believes there is strong evidence that Defendant committed the offenses for which he is being charged.

The evidence introduced by the Government, which included surveillance video, photographs, and the testimony of Postal Inspector Clinton Barry show as follows:

A little after noon on July 21, 2023, a white Mercedes pulled up next to a postal vehicle, and the passenger of the Mercedes got out and approached the female postal employee who was standing in front of a centralized US mailbox for an apartment complex. Although surveillance video shows the Mercedes and the

3

passenger coming towards the employee, it does not show his interaction with the employee. Nonetheless, according to Inspector Barry, the employee told him the assailant pointed a gun at her, grabbed her wrist, and reached for an arrow key[2] that was in the lock of a collection box. The employee also described the gun as a black Glock or Sig. The arrow key was on a gold chain that contained other USPS keys. The passenger returned to the Mercedes and the Mercedes drove off.

A few hours later law enforcement pulled the Mercedes over in Montgomery, Alabama. Defendant was the driver of the vehicle and was found with a concealed tan Glock gun in his waistband. The passenger matched the description of the assailant given by the employee and also matched the image of the person shown on the surveillance video walking towards the employee from the Mercedes.

During subsequent post-Miranda interviews of Defendant and the co-defendant, they both admitted the co-defendant stole the arrow key. Also, during a search of the vehicle, officers located the arrow key, another USPS key, and gold chain, along with checks and debit credit cards belonging to persons other than Defendant and the co-defendant. No other guns were found in the vehicle.

Although the gun found on Defendant and admitted by him to be his was a tan Glock, rather than a black Glock, the Court finds the evidence to be strong that (1) a

---

[2] According to Inspector Barry, an arrow key is a universal key that allows postal employees to pen boxes in certain areas.

gun was used in the commission of the offense and (2) the gun belonged to the Defendant. Additionally, as the Government pointed out, there is also strong evidence that while the Defendant was not the person who approached the carrier or pointed the gun at her, he is more than just the driver of the vehicle. Not only did he have the gun, but insurance records show that he is the owner or primary driver of the Mercedes. Also, the arrow key was found near the driver's seat, where he was seated.

### C. The history and characteristics of Defendant

The Court is also required to consider the history and characteristics of the defendant. Defendant is a twenty-three year-old male. According to the Pretrial Services Report ("PSR"), Defendant lives in Wetumpka, Alabama in the Middle District of Alabama, with his girlfriend and their minor 1-year old child. He has no relationship with his father and is unaware of his mother's occupation, although she too lives in Wetumpka. Defendant has lived in Wetumpka his entire life.

Defendant is a high school graduate and earned a welding certificate in 2018. Defendant, however, is not employed (and has not been employed since 2020). He is the caretaker for his 1-year old child and his girlfriend is the financial provider for the family and handles the family's finances. She makes $1,000 a week as an administrative assistant for a family business, but no information was proffered or provided regarding that business. Defendant owns one weapon, the Glock which

was confiscated by law enforcement as part of the arrest, and obtained a passport in May 2023, just a couple of months before the instant offense.

Defendant reports using Cannabis occasionally, with his last use one week before the initial appearance. Defendant's criminal history includes only one "conditional guilty plea" for an unlawful possession of marijuana charge in 2021. Plaintiff failed to appear in the Montgomery Municipal Court in December 2021 in that case, resulting in a capias being issued, which remains active.

Defendant argues his lack of a criminal history weighs against detention. The Court agrees that, generally, the lack of a criminal history weighs against detention. However, that fact is less significant here because Defendant is only 23 years old.

What is important to the Court is that Defendant is not employed and has no significant employment history and yet drives a Mercedes, was able to post a $50,000 bond in state court, and had in his possession numerous ATM receipts showing large sums of money deposited into, and located in, various bank accounts. Indeed, one such check was a check to Amerifirst for a CD for $100,000, which was unsigned and written on a trust account.[3] It is also of note that while Defendant and his family members reported that he is the caretaker for his 1 year old child, on the day of the incident he traveled more than 2 hours from his home on a weekday to

---

[3] According to the Government, it believes Defendant is a ring leader of some sort of personal identity theft fraud scheme beyond the theft at issue.

6

participate in a mid-day armed robbery of a female postal employee. Thus, even if Defendant's lack of a criminal history weighed against detention, it does not tip the scales in that favor.

**D. Nature and seriousness of the danger posed by release.**

Finally, the Court must consider the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. The Court believes Defendant poses a serious danger of harm to the community if released.

The Eleventh Circuit has used the Senate Judiciary Committee's report on the Bail Reform Act to ascertain what was meant by the word "danger." *United States v. King*, 849 F.2d 485, 487 n.2 (11th Cir. 988). The report states that

> [t]he concept of defendant dangerousness is described throughout this chapter by the term "safety of any other person or the community." The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.

*Report of the Senate Committee on the Judiciary*, S.Rep. No. 98–225, 98th Cong., 2d Sess. (1984) U.S. Code Cong. & Admin. News 3182, 3195–96.

Here, as discussed herein, the Government has produced evidence to establish probable cause that Defendant, along with another, robbed a postal female employee with a firearm in the middle of the day, on a residential street. The fact that they did

7

not injure the postal employee is of no import to whether Defendant is a danger to the community. If Defendant is willing to engage or participate in such a brazen attack, it is clear he has no concern for the safety of others. And, while the Court considered long and hard regarding whether GPS and home detention would ameliorate the Court's concerns, the Court determined they do not. Someone who is willing to engage in the conduct at issue would also be willing to leave his home and cut the GPS.

All the factors set forth in 18 U.S.C. § 3142(g) weigh in favor of detention in this case. The Court, therefore, finds that the government has established by clear and convincing evidence that there are no conditions of release that would reasonably assure the safety of any other person and the community. Although the Court's decision in this case is not based on the presumption set forth in 18 U.S.C. § 3142(e)(3), the Court's decision to detain Defendant in this case is consistent with "Congress's substantive judgment" that someone charged with violating 18 U.S.C. § 2422 "should ordinarily be detained prior to trial." *See Stone*, 608 F.3d at 945.

Accordingly, the Court **ORDERS** that Defendant be held in the custody of the Attorney General or his designated representative pending trial in this matter. The Attorney General or his designated representative shall, to the extent practicable, confine Defendant separate from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable

opportunity to consult with counsel in private while in custody. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**DONE AND ORDERED** this 9th day of August.

*s/ Hope T Cannon*

Hope T. Cannon
United States Magistrate Judge